UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MICHELLE HUDSON,                                    NOT FOR PUBLICATION

                Petitioner,
-against-                                           MEMORANDUM
                                                    AND ORDER
PEOPLE OF THE STATE OF NEW YORK,
                                                    07 CV 1327 (CBA)

                Respondent.
---------------------------------------------------------------X
AMON, United States District Judge:

      Petitioner Michelle Hudson ("Hudson") brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a 2003 Kings County conviction for First Degree Manslaughter. The petition raises three claims: (1) that the trial court's jury instruction regarding Hudson's affirmative defense of justification was erroneous, (2) that the trial court's <u>Allen</u> charge to the jury during deliberations was coercive, and (3) that trial counsel was constitutionally ineffective because he did not object to either allegedly erroneous instruction. For the reasons stated herein, the petition is denied.

I.     <u>Background</u>

      In or around late April or early May of 2002, Hudson–a drug user–moved into the apartment of the eventual victim, 62 year-old Erwin McConeyhead. McConeyhead was a crack addict and his residence served as what is often referred to as a "crack den", at which drug use and prostitution are commonplace. Apparently, during Hudson's stay at this "crack den", McConeyhead sexually abused her. Then, after stating her intent to kill McConeyhead to a friend, Hudson did so, sometime between the evening of May 25 and the morning of May 27, 2002. Hudson killed McConeyhead by stabbing him over sixty times in various places and then

1

kicking and stomping on his body.

After the incident, Hudson told a friend and others that she had killed McConeyhead because he had sexually assaulted her. His body was not discovered until June 4, 2002, when neighbors complained of a stench emanating from the apartment. After the discovery of the body, Hudson's friend informed the police that Hudson had confessed to the killing, and a stranger who had overheard Hudson discussing the killing told the police where to find her.

Hudson was charged with two counts of Murder in the Second Degree–one for intentional murder and the other for depraved indifference murder–as well as one count of Criminal Possession of a Weapon in the Fourth Degree. At trial, Hudson admitted that she had killed McConeyhead, but raised the affirmative defenses of justification–namely, that she acted in self-defense because he had attacked her with a knife–and that she had acted under extreme emotional disturbance as the result of the sexual abuse. After trial, the court submitted to the jury only intentional murder, not depraved indifference murder. The jury found that Hudson had committed intentional murder but that she had acted under extreme emotional disturbance, and convicted her of First Degree Manslaughter rather than Second Degree Murder.

Hudson appealed her conviction with the assistance of appellate counsel. Four claims were raised: (1) that the self-defense charge was erroneous for failure to instruct the jury that Hudson was under no duty to retreat (among other reasons); (2) that the court's <u>Allen</u> charge was inappropriate; (3) that trial counsel was ineffective for failing to object to the self-defense and <u>Allen</u> charges; and (4) that the sentence was excessive. On November 21, 2005, the Appellate Division unanimously affirmed Hudson's sentence. <u>See</u> <u>People v. Hudson</u>, 23 A.D.3d 581 (2d Dept. 2005). It held that the claims relating to the jury charges themselves were unpreserved for

appellate review, because they were not objected to at trial. Id. at 581. Additionally, the court held that "[t]he defense counsel, who presented a convincing affirmative defense of extreme emotional disturbance which resulted in a jury verdict convicting the defendant of the lesser crime of Manslaughter in the First Degree instead of Murder in the Second Degree, provided the defendant with meaningful representation." Id. at 581-82.[1]

Hudson then filed an application for leave to appeal the order of the Appellate Division to the Court of Appeals, which was denied on January 31, 2006. The instant petition followed.

II.  Discussion

    A.  Standard of Review

The standard of review for a federal habeas court reviewing a state court conviction is laid out in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). More specifically, a federal court may not grant a writ of habeas corpus brought by a state prisoner unless the state court proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see also Price v. Vincent, 538 U.S. 634, 639-40 (2003). Accordingly, "'[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [federal law] incorrectly.'" Price, 538 U.S. at 641 (quoting Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)). Rather, a state court's decision is "contrary to" clearly established federal law "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set

---

[1] Though not relevant here, the Appellate Division also found that defendant's sentence was not excessive. Id. at 582.

of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent.'" Id. at 640 (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Additionally, "[u]nder the 'unreasonable application' clause [of the AEDPA], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. In the Second Circuit, "it is well-established . . . that the objectively unreasonable standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003) (internal quotations omitted).

With these standards in mind, the Court now turns to the three grounds raised here by Hudson. Because the analysis of the two jury charge claims will be affected by the fate of the ineffective assistance of trial counsel claim, the Court will address the latter first.

B.      Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established the test for constitutionally ineffective assistance of counsel, requiring both that counsel's performance be deficient and that this deficiency result in prejudice to the defendant. The Court stated:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

4

466 U.S. 668, 687 (1984).

The Second Circuit has stated that the deficient performance inquiry requires that "counsel's performance was so unreasonable under prevailing professional norms that counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment." United States v. Kurti, 427 F.3d 159, 163 (2d Cir. 2005). When conducting this inquiry, "the Court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' that '[t]here are countless ways to provide assistance in any given case,' and that '[e]ven the best criminal defense attorneys would not defend a client in the same way.'" Id. (quoting Strickland, 466 U.S. at 689) (alterations in original). With respect to the prejudice inquiry, the Strickland Court explained that it requires a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694; see also Hemstreet v. Greiner, 491 F.3d 84, 89 (2d Cir. 2007). Hudson has not shown that the Appellate Division applied these standards in an unreasonable manner.

First, with respect to the Allen charge, trial counsel's failure to object did not render his performance at trial constitutionally ineffective. Indeed, he did not even err by his failure to object, because the charge was proper.[2] The type of charge at issue is derived from the seminal case of Allen v. United States, 164 U.S. 492 (1896), in which "the Supreme Court approved of supplemental instructions given to a deadlocked jury urging them to continue deliberating and for the jurors in the minority to listen to the majority's arguments and ask themselves whether

---

[2]Rather than object to the Allen charge, the record indicates that both parties agreed to it prior to it being read to the jury. (Tr. R. at 558, 561-62.)

5

their own views were reasonable under the circumstances." Spears v. Greiner, 459 F.3d 200, 204 (2d Cir. 2006) (citing Allen, 164 U.S. at 501). "The instructions in Allen included statements directing that 'the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows,' and that it was the jury's duty 'to decide the case if they could conscientiously do so.'" Spears, 459 F.3d at 205 (quoting Allen, 164 U.S. at 501). "These statements served to remind jurors in the minority that a verdict was not required, and that no juror should surrender the juror's conscientiously held views for the sake of rendering a verdict." Spears, 459 F.3d at 205.

In Lowenfield v. Phelps, the Supreme Court revisited the propriety of an instruction given to a deadlocked jury. 484 U.S. 231 (1988). The Supreme Court held that the potential coercive effect of a jury charge given to a deadlocked jury must be evaluated "in its context and under all circumstances." Id. at 237 (internal quotations omitted).[3] Although the Second Circuit has observed that it is often desirable for the court to remind jurors "not to abandon their own conscientious beliefs" in the context of an Allen charge, this observation has not become a bright-line requirement that modifies the generally applicable standard articulated in Lowenfield. See Spears, 459 F.3d at 205-07. Accordingly, the Second Circuit made clear that an Allen charge requires no magic words, rather, as stated in Lowenfield, it must be evaluated "in its context and under all circumstances." Id.

In this case, the Allen instruction at issue clearly meets the standard set forth in Lowenfield, and in fact contained language reminding the jurors not to abandon their own beliefs

---

[3]In Lowenfield, the Supreme Court approved of the charge at issue given despite the fact that the then-deadlocked jury returned a verdict soon after receiving the Allen charge–as was apparently the case here. Id. at 240.

at the expense of reaching a verdict:

> While all of us want you to agree on a verdict we don't want a verdict in any course. You are instructed that each of you must decide the case for yourself and not surrender honest beliefs as to the weight and effect of the evidence solely because of the opinion of your fellow jurors. . . . We don't want anyone to compromise a consciously held belief simply for the purpose of returning a verdict.

(Tr. R. at 559.) Moreover, the Court has reviewed the entire charge (see id. at 558-61) and finds that it is not, in its context and under all of the circumstances, improperly coercive.

Because the Allen charge was proper, counsel's failure to object was not constitutionally deficient assistance. See United States v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005) (performance by counsel not deficient by virtue of his failure to object to the government's proper summation); Lanfranco v. Murray, 313 F.3d 112, 118-20 (2d Cir. 2002) (counsel's failure to object to an amendment to the indictment, where the amendment was proper, was not deficient performance); United States v. Boothe, 994 F.2d 63, 68-69 (2d Cir. 1993) (counsel's failure to object to certain testimony that was admissible was not deficient representation). Accordingly, far from being an objectively unreasonable application of clearly established federal law, the Appellate Division was correct in finding that counsel's performance in this case was not ineffective on the basis of his failure to object to the trial judge's Allen charge.

Second, with respect to the justification charge, Hudson contends that counsel's failure to object when the trial judge did not instruct the jury that there was no duty to retreat in this case constituted ineffective assistance of counsel.[4] This contention is without merit. Counsel's

---

[4] Under New York law, a person may not use deadly force to defend themselves if they know that they can safely retreat. However, there is no such duty to retreat when the person is in their home and is not the original aggressor. See N.Y. Penal Law § 35.15(2).

7

failure to object to the duty to retreat instruction–while perhaps an error–does not rise to the level of constitutionally deficient assistance. As the Supreme Court has noted, the right to effective assistance of counsel is the right to a meaningfully adversarial proceeding, not a right to flawless representation: "The right to effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted–even if defense counsel may have made demonstrable errors–the kind of testing envisioned by the Sixth Amendment has occurred." United States v. Cronic, 466 U.S. 648, 656 (1984).

Moreover, "actions or omissions that 'might be considered sound trial strategy' do not constitute ineffective assistance." United States v. Berkovich, 168 F.3d 64, 67 (2d Cir. 1999). And, "[a]s with trial decisions to offer or stipulate to certain evidence, decisions such as when to object and on what grounds are primarily matters of 'trial strategy and tactics.'" Cohen, 427 F.3d at 170 (quoting Brown v. Artuz, 124 F.3d 73, 77 (2d Cir. 1997). Here, counsel presented a justification defense solely on the basis of his client's (Hudson's) testimony. That testimony, if credited, established that Hudson was unable to retreat, rendering the issue of whether or not she had a duty to do so safely if possible irrelevant.[5] (R. 385.)[6] Moreover, in contesting Hudson's justification defense, the government argued and attempted to prove that the victim never attacked Hudson, not that Hudson had a duty to retreat but failed to do so. (R. 455-63.) That counsel failed to object to a jury instruction regarding an aspect of the justification defense that

---

[5]She testified that she wasn't able to get through the narrow hallway and past McConeyhead to reach the door, and that when she attempted to do so, he grabbed her and repeatedly "jabbed" her with the knife. (R. 385.)

[6]Citations in the format (R. __) are to the trial record.

8

was effectively mooted by his own client's testimony and that was not put in issue by the prosecution does not render his performance in the trial of this matter constitutionally deficient.

Additionally, even if counsel's failure to object to the erroneous instruction did render his assistance constitutionally deficient, it did not result in prejudice to the defendant and therefore would not give rise to ineffective assistance of counsel under <u>Strickland</u>. <u>See</u> <u>United States v. Chin</u>, 224 F.3d 121, 125 (2d Cir. 2000) (counsel's performance not constitutionally ineffective where the court was "not convinced that but for counsel's alleged errors the result of the proceeding would have been different"). Had the objection been made and sustained, resulting in a jury instruction to the effect that there is no duty to retreat in one's home, it would not have changed the outcome. As noted above, the validity of the justification defense did not turn on Hudson's failure to retreat. Moreover, the justification defense itself was severely flawed. There was substantial evidence that Hudson's story that the victim attacked her with a knife was fabricated. First, while Hudson testified that she began stabbing McConeyhead in the hallway[7] (386-92), there was no blood found anywhere in the apartment except for in the bedroom where the body was found, despite the fact that the medical examiner testified that the wounds inflicted would have bled immediately and profusely. (R. 83-84.) Second, while Hudson testified that she suffered "gashes" to her arm and leg in the struggle (R. 386-87), when she was arrested, her only visible injury was a laceration on her arm. (R. 193-95.) Third, the victim was a frail 61 year-old, only 5'9" and 117 pounds. (R. 76, 321.) Accordingly, counsel's failure to object to the trial judge's instruction that Hudson had a duty to retreat in this case did not result in prejudice.

---

[7]She also testified that he managed to stab her in the hallway and that she bled in the hallway. (R. 386-87.)

See Diguglielmo v. Smith, 366 F.3d 130, 136 (2d Cir. 2004) (ineffective assistance of counsel claim fails due to lack of prejudice where defense counsel's failure to object to a justification charge was harmless error). In Strickland's terms, the Court is unconvinced that, but for counsel's failure, the result of the proceeding would have been different. Thus, the Appellate Division's application of Strickland was not objectively unreasonable.

### C. The Jury Charges

Hudson's other two grounds for habeas relief are those that underlie his ineffective assistance of counsel claim–namely, the two allegedly erroneous jury instructions that counsel did not object to. However, both of these claims are procedurally barred from habeas review. As a function of the independent and adequate state ground doctrine, a federal claim is generally barred from federal review when a state court relies on a state procedural rule to reject that claim. See Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 729 (1991). This rule applies when the federal court is considering a state court judgment in the context of a habeas petition. See Coleman, 501 U.S. at 729-30. Therefore, a state's invocation of its rules regarding the preservation of claims will ordinarily preclude the review of the underlying federal issue in federal court. See Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977).

In this case, the Appellate Division held that "[t]he defendant's challenges to the trial court's jury instructions are unpreserved for appellate review." Hudson, 23 A.D.3d at 581 (citing N.Y. CPL 470.05(2)). Both the Supreme Court and the Second Circuit have held that failure to comply with a state's contemporaneous objection rule can result in a procedural bar in a subsequent habeas petition. See Murray v. Carrier, 477 U.S. 478, 485 (1986) ("[A] federal habeas petitioner who has failed to comply with a State's contemporaneous-objection rule at trial

must show cause for the procedural default and prejudice attributable thereto in order to obtain review of his defaulted constitutional claim" (citing Wainwright, 433 U.S. at 87)); Reyes v. Keane, 118 F.3d 136, 138 (2d Cir. 1997) ("A state prisoner who fails to object to a jury instruction in accordance with state procedural rules procedurally forfeits that argument on federal habeas review. Under New York law, a defendant must object to an alleged error in a jury instruction before the trial court in order to preserve the issue for appeal." (internal citations omitted)). Moreover, the Second Circuit has consistently held that a procedural default under New York's contemporaneous objection statute–section 470.05–provides an independent and adequate state law ground barring habeas review. See Garcia v. Lewis, 188 F.3d 71, 78-79 (2d Cir. 1999) (citing cases); Haynsworth v. Fischer, 06 Civ. 13329, 2007 WL 2219422 at *14 (S.D.N.Y. Aug. 3, 2007) (citing cases).

However, when a petitioner has procedurally defaulted on a claim in state court and is thus procedurally barred from raising that claim in a section 2254 petition, the federal habeas court can still review the claim on the merits if the petitioner can make "a showing of cause for the default and prejudice to the petitioner." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994); see also Murray v. Carrier, 477 U.S. 478, 485-86 (1986); Wainwright, 433 U.S. at 87. Though not precisely defined, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Amadeo v. Zant, 486 U.S. 214, 222 (1988) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). One such external objective factor that has been held to constitute cause is constitutionally ineffective assistance of trial counsel, but in order for this to excuse the procedural default, it must first be presented to the

11

state court as its own independent constitutional claim. See Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). In this case, although Hudson did raise the issue of constitutionally ineffective assistance of trial counsel in state court as its own independent claim, as discussed above, that claim is without merit. Accordingly, it does not constitute "cause" for the purposes of the procedural default. Moreover, Hudson has raised no other "objective factor external to the defense" that would give rise to cause.

Furthermore, even assuming Hudson could establish cause, no prejudice to Hudson would result from the failure of the Court to consider either of these claims on the merits–because they would both fail. First, as is discussed above, the Allen charge at issue was entirely proper, and thus the Court would reject this ground for habeas relief on the merits were it reached. Nor would the justification charge provide a basis for habeas relief if the Court were to reach its merits. An error of state law in a jury instruction does not provide the basis for federal habeas relief unless the error, considered in the context of the trial as a whole, "so infect[s] the entire trial process that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 146-47 (1973); see also Estelle v. McGuire, 502 U.S. 62, 72 (1991); DeValle v. Armstrong, 306 F.3d 1197, 1200-01 (2d Cir. 2002). "Justification is a state law defense," and "[a] state prisoner 'cannot point to a federal requirement that jury instructions on . . . justification . . . must include particular provisions." DiGuglielmo, 366 F.3d at 136. As is discussed above, in this case the erroneous jury charge was unlikely to have any effect on the trial, let alone so infect the entire trial such that it violated Due Process. Accordingly, the erroneous justification instruction does not amount to a constitutional violation under Cupp, and were the Court to reach the merits of this ground for habeas relief, it would be rejected.

12

Therefore, Hudson has established neither cause nor prejudice for her procedural default.

In addition to the cause and prejudice test, a procedural default may be excused if "the habeas petitioner can demonstrate a sufficient probability that our failure to review h[er] federal claim will result in a fundamental miscarriage of justice." Edwards, 529 U.S. at 451. To meet this test, the petitioner must show that "it is more likely than not that no reasonable juror would have convicted h[er]" had the alleged error not occurred. Schlup v. Delo, 513 U.S. 298, 327 (1995). In order to prevail under the Schlup standard, a petitioner must prove "actual innocence"—i.e. factual innocence, not mere legal insufficiency. Bousley v. United States, 523 U.S. 614, 623-24 (1998); see also Reyes, 118 F.3d at 138 ("Miscarriage of justice" in this context means "that the constitutional violation has probably resulted in the conviction of one who is actually innocent." (internal quotations omitted)). The Supreme Court has noted that this standard is "demanding and permits review only in the 'extraordinary' case." House v. Bell, __ U.S. ___, 126 S.Ct. 2064, 2077 (2006).

In this case, Hudson admitted to friends, strangers, and the trial court that she killed the victim–by stabbing him over sixty times and then beating him as he died. She nevertheless was convicted of First Degree Manslaughter rather than murder on the basis of her successful extreme emotional disturbance defense. There is no viable claim that she is actually innocent of that charge.

III.    Conclusion

For the foregoing reasons, the instant petition is denied. As this petition presents no

13

"substantial showing of the denial of a constitutional right," a certificate of appealability shall not issue. 28 U.S.C. § 2253(c). The clerk of the court is directed to enter judgment and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
October 29, 2007

Carol Bagley Amon
United States District Judge